IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUGUSTUS HEBREW EVANS, JR., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 20-1208-RGA |
| CATHERINE MCKAY, et al., | : | |
| Defendants. | : | |

Augustus Hebrew Evans, Jr., James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

**MEMORANDUM OPINION**

June 30, 2021
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Augustus Hebrew Evans, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 1). Plaintiff appears *pro se* and has paid the filing fee. An Amended Complaint was filed on June 9, 2021. (D.I. 35). It is the operative pleading. Plaintiff seeks injunctive relief. (D.I. 18, 20, 30). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915A(a).[1]

## I. BACKGROUND

Plaintiff raises claims for violations of the Eighth Amendment to the United States Constitution. He alleges medical Defendants were deliberately indifferent to his serious medical needs, denied/delayed medical care, and subjected him to unnecessary and wanton infliction of pain. (D.I. 35 at 3). He alleges Delaware Department of Correction Defendants have a duty to provide adequate medical care to those under their care and custom, breaches of duty for action/inaction, and respondeat superior liability where appropriate. (*Id*.). The Amended Complaint discusses Plaintiff's claims in three stages.

**Stage One** took place from April 28, 2018 until January 23, 2019. (*Id*. at 16). Plaintiff injured his right shoulder on April 28, 2018 while on the yard. (D.I. 35 at ¶ 1). He told Sgt. Matthew Scott that he was injured and Scott advised Plaintiff to put in a sick call slip, and he let Plaintiff in from the yard. (*Id*. at ¶¶ 2, 5). Plaintiff was in visible pain, and he gave a sick call slip to Defendant Joanne Bampo while she was dispensing

---

[1] Section 1915A(b)(1) is applicable to all prisoner lawsuits regardless of whether the litigant paid the fee all at once or in installments. *Stringer v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 752 (3d Cir. 2005).

1

medication. (*Id*. at ¶ 6). Bampo did not examine Plaintiff, told him nothing was wrong, and left. (*Id*.). Plaintiff was seen four days later by Bampo. (*Id*. at ¶ 7) She did not examine Plaintiff and told him she would refer him to the provider. (*Id*.).

Plaintiff was seen by Defendant nurse Kimberly Long on May 13, 2018. (*Id*. at ¶ 9). Long did not examine Plaintiff and told him that he complained too much. (*Id*.). Long ordered pain patches for Plaintiff. (*Id*.). When Plaintiff asked why he had not been x-rayed, Long told the officers, "he's done" and Plaintiff was taken to his cell. (*Id*.). Plaintiff submitted grievances, demanded an x-ray, and spoke to Long and Bampo yet no one did anything. (*Id*. at 10).

After Plaintiff submitted a grievance on June 10, 2018, he was seen by Nurse Practitioner Monica Mills who ordered pain medication, an MRI, and told Plaintiff that an x-ray would not show any damages without a dye injection. (*Id*. at ¶ 12). Plaintiff alleges that the medication did not relieve his pain and that the MRI consult was denied. (*Id.* at ¶ 13).

Plaintiff wrote to Defendants Connections Chief Executive Officer Catherine McKay, Connections Medical Administrator Christopher Meon, Connections Medical Administrator Matthew Wofford, Warden Dana Metzger, Commissioner Perry Phelps, Charge Nurse Jessica Johnson, and Treatment Administrator Stacie Hollis. (*Id*. at ¶ 14). He also wrote to non-defendant Marc Richman. (*Id*.). Plaintiff alleges there was not one response from June 10, 2018 until October 2018.

In October 2018, Plaintiff spoke to Meon, who did not examine him, told Plaintiff that an MRI was not needed, and denied the MRI consult Mills had submitted. (*Id*. at ¶ 15). Plaintiff continued to complain to Defendants with grievances and letters and no

2

one responded. (*Id*. at ¶ 16). Defendant Nurse Practitioner Flora Antangho saw Plaintiff, submitted an MRI consult, which was denied in November 2018. (*Id.* at ¶ 17). Antangho indicated that Wofford would not sign off on the MRI and, until he did, she could only do so much. (*Id*. at ¶ 18).

Wofford approved the MRI consult in December 2018. (*Id*. at ¶ 21). The MRI was done on January 23, 2019, and it revealed four complete tears in the right shoulder with a complete rotator cuff tear. (*Id*. at ¶ 22). Surgery was recommended and to "please avoid handcuffing [Plaintiff] behind his back." (D.I. 36 at 3 of 70). Plaintiff alleges that he suffered for nine months and that it should not have taken that long to receive approval of the MRI. (D.I. 35 at ¶ 24). Plaintiff alleges that he wrote to Meon with the MRI results and that Meon would not speak to Plaintiff. (*Id*. at ¶ 27).

**Stage Two** took place from January 23, 2019 until April 1, 2020. (D.I. 35 at 17). Plaintiff was seen by Dr. Handling, who increased Plaintiff's medication and told him surgery would be scheduled soon after it was requested by DOC/Medical. (D.I. 35 at ¶ 28). Plaintiff then wrote to Defendants Johnson, Consult Scheduler Coordinator Misty May, and Consult Coordinator Laurie Jones-Mancini about the next phase of treatment. Plaintiff was told that only administrators could approve the next phase. (*Id*. at ¶ 29). An appointment was scheduled for June 10, 2019. (*Id*.).

Plaintiff was seen by Dr. Handling on June 10, 2019. (*Id*. at ¶ 30). He alleges that follow-up was delayed and implementation of Dr. Handling's orders denied. (*Id*.). Plaintiff complained and met with Wofford on July 12, 2019. Wofford used profane language in telling Plaintiff that he did not care about a lawsuit. (*Id*. at ¶ 31). Plaintiff asked to meet with Wofford's supervisor to discuss the delay in follow-up care. (*Id*.).

3

Plaintiff alleges that he was denied a follow-up appointment, suddenly his medications were stopped, and the substitute medications proved inadequate. (*Id.* at ¶ 32). Plaintiff alleges that May and Jones-Mancini knowingly delayed "the consults and chose to further delay in retaliation for [Plaintiff] wanting them fired from jobs they were . . . unqualified to properly perform." (*Id*. at ¶ 36).

Antangho took Plaintiff off the pain medication he had been taking and gave him substitute medication. (*Id*. at ¶ 37). Plaintiff alleges that the substitute medication had no effect and that "they sidestepped the medication refusal policies." (*Id*.). Defendant Mary Doyle provided Plaintiff physical therapy. (*Id*. at ¶ 39). Plaintiff alleges that she told him only surgery could repair the injury, that even with physical therapy improper healing would persist, the injury was severe, until surgery Plaintiff would always have pain, and that due to opioid issues and prison/medical policies, physical therapy would be used more even though it might not help. (*Id*.) Defendant Nurse Practitioner William Ngwe told Plaintiff that he wanted to order him Tramadol but that "Johnson and Administrators are his bosses." (*Id*. at ¶ 40). Plaintiff met with Wofford on July 15, 2019. Wofford told Plaintiff, "we thought you were faking," and that he did not care about a lawsuit. (*Id*. at ¶ 41). Plaintiff submitted grievances regarding pain medication; it was explained to Plaintiff that the medication he sought was not indicated for his condition. (D.I. 36 at 58 of 70).

**Stage Three** began on April 1, 2020 when Centurion became the new health care contract provider for the DOC. Plaintiff alleges that since April 1, 2020 he continued to suffer with severe pain; has a lack of, and inability to, sleep; and has frustration, depression, and other physical and mental issues associated with the

4

complete rotator cuff tear. (*Id*. at ¶ 45). Plaintiff states that the pandemic affected surgery from April 1, 2020 until to September 2020.[2] Plaintiff alleges that he requested Dr. Handling's consults be expedited, complained of continual pain and inadequate medication, and requested a meeting with the medical administrator and the warden to discuss medical issues. (*Id*. at ¶ 48). Plaintiff states that "as of January 15, 2021, the latest issue has been presented to DOC and Corrections Defendants." (*Id*. at ¶ 53).

Plaintiff seeks compensatory damages and injunctive relief requiring that he be seen by a specialist to evaluate the right rotator cuff tear and lipomas. (D.I. 35 at 32-33).[3]

## II. SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent

---

[2] Filings by Plaintiff indicate that he was sent for a surgical assessment on November 24, 2020, and surgery was performed on March 19, 2021. (D.I. 31 at 2).
[3] The injunctive relief sought in the prayer for relief is moot, Plaintiff having been evaluated by a specialist and having had surgery. *See supra*, n.2.

5

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Id*.

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S.10 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id*. at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then

6

determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Statute of Limitations

Plaintiff's Complaint is signed September 7, 2020. It was filed and docketed on September 10, 2020. (D.I. 1). According to Court records,[4] it was submitted for filing to prison authorities on September 10, 2020, the day it was filed. Stage One of the Amended Complaint raises claims for actions or inactions from April 28, 2018 until January 23, 2019.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1985). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when the plaintiff knew or should have known of the injury upon which [his] action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

---

[4] The Court accepts electronically filed documents, and a separate email system shows that the Complaint was emailed on September 10. The prison's policy is to send the email the same day as it is received. If the filing date were September 7th, the conclusions would be the same.

7

The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1167 (3d Cir. 1986). "Although the statute of limitations is an affirmative defense, *sua sponte* dismissal is appropriate when 'the defense is obvious from the face of the complaint and no further factual record is required to be developed.'" *Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)). Accordingly a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii).

Based upon the two-year limitation period, any claims that accrued prior to September 10, 2018 are time-barred. In Stage One, Plaintiff complains of action or inaction occurring prior to September 10, 2018. For example, he complains of acts by Bampo on April 28, 2018 and Long on May 13, 2018, and inaction after he wrote to McKay, Meon, Wofford, Metzger, Phelps, Johnson, and Hollis and received no responses from June 10, 2018 until October 2018 when Plaintiff spoke to Meon. As discussed, Plaintiff did not file his Complaint until September 10, 2020. Hence, it is evident from the face of the Complaint that the period of non-response was two months on September 10, 2018, and thus that the foregoing claims all accrued prior to that date, and are barred by the two year limitations period. They will be dismissed. The only claims against McKay, Bampo, Long, Phelps, Metzger, and Hollis allegedly occurred

during Stage One of the Complaint and are time-barred.[5] Therefore, the foregoing Defendants will be dismissed.

### B. Personal Involvement/Respondeat Superior

Anthony Jacobs, the Centurion Medical Administrator, is a named defendant. The Amended Complaint, however, contains no allegations directed towards Jacobs. "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Given that there are no allegations directed towards Jacobs, under the liberal notice pleading standard of Rule 8(a), the Amended Complaint fails to allege facts that, if proven, that would show personal involvement by Jacobs. In addition, to the extent that Jacobs is named as a defendant based upon his supervisory position, it is well-established that there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). Accordingly, Jacobs will be dismissed as a defendant.

---

[5] In addition, it is appropriate to dismiss the claims against Phelps and Metzger for another reason. Prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). (discussing *Durmer*, 991 F.2d at 69).

### C. Medical Claims

The remaining claims are based upon delay in medical care and treatment, failure to treat, and changes in medication administered to Plaintiff.

A prison official's "deliberate indifference to serious medical needs of prisoner" is a kind of cruel and unusual punishment "proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also Brown v. Plata*, 563 U.S. 493, 511 (2011) (when a prison deprives a prisoner of adequate medical care, courts have a responsibility to remedy the resulting Eighth Amendment violation); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (under the Eighth Amendment, prisons officials must ensure inmates receive adequate medical care). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A prisoner does not have the right 'to choose a specific form of medical treatment.'" *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. Allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a constitutional deprivation). Finally, "[m]ere

disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d at 235.

Plaintiff alleges that Nurse Practitioner Antangho submitted an MRI consult for Plaintiff, and Wofford denied it in November 2018. He also alleges that Antangho took him off pain medication he had been taking and gave him substitute medication that was ineffective and "sidestepped" medical refusal policies. Plaintiff alleges that Nurse Practitioner Ngwe told Plaintiff he wanted to order Tramadol but charge nurse Johnson and administrators "are his bosses," inferring the medication would not be authorized. These allegations do not raise claims of deliberate indifference. Antangho requested Plaintiff undergo an MRI; she did not deny or delay Plaintiff medical care. While Plaintiff was unhappy that he was not prescribed the medication he wanted and did not believe the substitute medication administered him was effective, this does not state a constitutional claim. Plaintiff has no right to his choice of medication, so long as decision to provide a certain type of medication is reasonable. At most, the medication claim possibly suggests negligence. I have reviewed the voluminous exhibits Plaintiff submitted to support his claim and cannot say that the substitution of medication rises to the level of deliberate indifference. The foregoing claims will be dismissed.

Finally, Plaintiff alleges that he was provided physical therapy by Doyle, who told him that even with physical therapy improper healing would persist, Plaintiff would have pain until he underwent surgery, and physical therapy would be used more even though it might not help due to opioid issues and prisoner/medical therapies. The claim against Doyle does not allege deliberate indifference. Rather, Doyle provided Plaintiff care,

11

explained to him the efficacy of the treatment, and that he would have pain until he had surgery. The claim against Doyle will be dismissed.

Plaintiff also alleges a delay or denial of medical treatment. A delay or denial of medical treatment claim is approached differently than an adequacy of care claim. *U.S. ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979).

> Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry -- since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim. Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim. All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors.

*Pearson v. Prison Health Serv.,* 850 F.3d 526, 537 (3d Cir. 2017).

Plaintiff alleges that he wrote to charge nurse Johnson, Consult Coordinator Jones-Mancini, and Consult Scheduler Coordinator May about the next phase of needed treatment. The treatment was delayed. Johnson spoke to Plaintiff and told him that only administrators could approve the next phase of treatment. Plaintiff then alleges that May and Jones-Mancini knowingly delayed the consults and chose to further delay them in retaliation because Plaintiff wanted them fired from their jobs.

The claims are frivolous. As alleged by Plaintiff, only administrators could approve the next phase of treatment. There are no allegations that Johnson, May or Jones-Mancini held administrative positions. And, Plaintiff repeatedly alleges that it was Meon and Wofford who were behind the delays in treatment. There are no facts to support Plaintiff's conclusory claim that May and Jones-Mancini knowingly delayed the

12

consults and chose to further delay in retaliation because Plaintiff wanted them fired. A claim will not suffice if it "offers [merely] 'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement'". *Twombly*, 550 U.S. at 555, 557). The claims will be dismissed.

Liberally construing Plaintiff's claims as I must, Plaintiff has raised what appear to be cognizable and non-frivolous claims against Wofford and Meon for denial and delay in providing needed medical care.

For the reasons discussed, Ngwe, Johnson, Antangho, Jones-Mancini, Doyle, and May and the claims against them will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)&(ii) and § 1915A(b)(1). Plaintiff will be allowed to proceed against Wofford and Meon.

## IV. INJUNCTIVE RELIEF

Plaintiff has filed three motions for injunctive relief. The first, filed February 22, 2021, "seeks a preliminary injunction to ensure that the delays and denials of adequate medical care will be addressed and the wanton infliction of pain and suffering will end." (D.I. 18). Plaintiff "seeks expedited scheduling and transport to receive the needed medical care and following of ordered treatments." The motion's allegations are similar to those raised in the Amended Complaint.

The second, a supplemental motion for injunctive relief, filed March 2, 2021, alleges retaliation for exercising constitutionally protected rights, and "demands medical accommodations that account for the full nature and extent of the medication need" and seeks to enjoin Defendants from denying Plaintiff equal protection, utilizing write-up process to retaliate, and exposing Plaintiff to avoidable foreseeable harms. (D.I. 20).

13

The third, another "supplemental preliminary injunction – post operation," filed June 8, 2021, "demand[s] to be seen and evaluated by operating physician as to persistent pain and possible need to correct with further surgery and pain management beyond the one size for all as relied upon by Defendants" and "an injunction demanding interference with treatments and examinations to stop and desist." (D.I. 30, 31).

Following screening, Wofford and Meon are the only defendants who remain in the case. Both were Connections' employees. Connections is no longer the healthcare provider for the DOC, having been replaced by Centurion on April 1, 2020. Because Connections is no longer the contract healthcare provider for the DOC, Plaintiff's motions for injunctive relief are moot as he is unlikely to suffer any more alleged harm from Connections or its personnel. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019).

Accordingly, the motions will be dismissed as moot.

## V. CONCLUSION

For the above reasons, the Court will: (1) dismiss as moot Plaintiff's motion for injunctive relief (D.I. 18) and supplemental motions for injunctive relief (D.I. 20, 30); and (2) dismiss Defendants McKay, Bampo, Long, Phelps, Metzger, Hollis, Jacobs, Ngwe, Johnson, Antangho, Jones-Mancini, Doyle, and May and all claims against them pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) & (ii) and § 1915A(b)(1) and allow Plaintiff to proceed against Wofford and Meon.

Plaintiff has filed two complaints. For some of the dismissed Defendants, for example, those against whom the statute of limitations has run, permitting amendment would be futile. For others, such as Jacobs, the Centurion Medical Administrator, who

is dismissed because there are no allegations, it is possible that Plaintiff simply overlooked making some allegations, and permitting amendment would not necessarily be futile. I am going to enter an order on the assumption that Plaintiff is not going to file another amended complaint, but if Plaintiff states within two weeks his intent to file another amended complaint, I will vacate the service portion of the order, and await the filing of a second amended complaint.

        An appropriate Order will be entered.